Good morning, Your Honors. May it please the Court, my name is Andrea Pinedo and I'm the pro bono attorney for the petitioner, Mrs. Ramirez. I'll be discussing three issues today. The first one, which I believe is the main issue in this case, is whether the Department of Homeland Security can reinstate the removal order of an individual whose last entry was lawful. Second, whether there is substantial evidence that the gang sought to persecute Mrs. Ramirez on account of her particular social group of her family. And finally, whether she should be granted withholding of removal or withholding under the Convention Against Torture. Mrs. Ramirez fled her country because after the murder of her brother and the persecution she suffered. When she entered the United States, she asked for her right, you know, her ability to apply for asylum and was denied that right. She was returned to her home country where she again faced persecution. She entered, you know, fleeing, afraid for her life, she reentered the United States. And years later, the Department of Homeland Security apprehended her and moved to reinstate her prior removal order. After the reinstatement of her removal order, she appeared before an asylum officer who found that she had a reasonable fear of persecution on account of her membership in her family. Her case was referred to the immigration judge who denied all applications for relief and that decision was affirmed by the Board of Immigration Appeals. Mrs. Ramirez was then removed back to her home country in Honduras. Through new counsel, she filed a motion to reopen with the Board of Immigration Appeals arguing that her former attorney had committed ineffective assistance at counsel as well as presenting new evidence that upon her return again to her home country of Honduras, she again suffered persecution. The Board of Immigration Appeals reopened her case and remanded it back to the immigration judge for consideration of all relief. Let me stop you there. Would you say through that stage, immigration removal proceedings were operating under, among other things, 8 CFR 241.8 which says even though someone who has removal reinstated, removal order reinstated is not entitled to relief, they are entitled to raise the Convention Against Torture and Withholding of Removal. So was that the process with maybe a few bumps in the road that was being followed? Yes, at that point. But what's important in this case is that when they removed her, that executed that removal order. And when they paroled her back into the United States, she no longer was a person who entered unlawfully. She entered with the permission of the Department of Homeland Security. Well, the 241.85 doesn't talk about the most recent entry. It talks about the reinstatement of a removal order when somebody is found here having entered unlawfully. As you understand better than I do, since I assume you're a frequent practitioner in this area, parole is not admission. It is a legal entry into the country, I suppose. I'm not sure if that terminology has been used, but it's clearly by definition on the INA not an admission. And she's been allowed back in to participate in the processing of this removal. So it's a bold argument. Do you have any authority to support that the fact that she is paroled somehow? I mean, the thing is, you're saying that the government has erred to your client's benefit by allowing her to come back in to participate in what we're talking about. They should have left her in Honduras or Mexico. I don't know when she's been in Mexico versus Honduras. It seems like part of the time she was in Mexico. Isn't that your argument, that henceforth and forevermore immigration will never parole anybody back into the country to allow them to participate in this sort of proceeding? Well, I think, Your Honor, that immigration could have, you know, they could have prohibited this from happening if they wouldn't have removed her while her case was still pending. You know, they have the discretion whether to remove her or not. They could have kept her in the United States and waited, you know, her case was actually on petition for review at this court. They could have waited. But wouldn't the BIA final decision, after that she was removed and the motion to reopen was pending, and so the action on motions to reopen can be made and, of course, the response to motions to reopen have no deadline on them or request for a response to reopening. So it seems to me there's always a risk under your argument that if the government follows through on what is the final order, that they should never bring the person, that there's a risk that they, and that would sort of, for people like your client, parole would all of a sudden no longer be an option. Well, you know, I'd like to also point out that when they parole her into the United States, you know, there's no differences in the act between different parolees. And actually the parole authority, I'll say that again, there is no differentiation between different classes of parolees. So I think the government is saying that, well, because we paroled her for maybe a specific purpose, now she's no longer, should be considered a parolee. And that's just not supported in the act because there is no differentiation between a parolee for one reason or the other. But also, when they, you know, decided to parole her into the United States, you know, that's something that they've considered under their policy memorandum that explains what should happen if a person is removed while they're case, and then when on petition for review or on a motion to reopen, that they have the, that parole is a, is a reasonable mechanism for bringing them back. So this seems to be something that they've contemplated since they referred to it in their 2012 memorandum on how, you know, how to return an individual once their case has been reopened or, or if they went on appeal at the, you know, at the circuit court level. And so, and, you know, the, the proposition that there is no differentiation between, you know, how you treat a parolee is also supported by the Department of Homeland Security's USCIS memo of 2009 that explained what unlawful presence is and how parole works with unlawful presence. And it states that the purpose of the parole is irrelevant. Additionally, the BIA, the Board of Immigration Appeals, has even treated a returning permanent resident from abroad as a parolee. And I don't know, as you may know, that permanent residents are not usually considered applicants for admission. But the BIA even said, well, if a permanent resident is coming back and the Department of Homeland Security decides they want to parole them, rather than admitting them as a permanent resident, that's okay. So there doesn't, you know, there's no different classifications of the parolee. And in this case, they paroled her. I mean, they made the decision to parole her. You know, they could have decided not to, but they didn't. And so, that's the facts of this case. Yeah, but that, that can't be a gotcha. She's still, parole is temporary for a particular purpose. And it doesn't change the overarching status. Well, parole is not necessarily a status, but it treats the person as if they're standing at the border as an applicant for admission. So if she would have just come to the border and not been paroled in, she could have asked for asylum at the border. So they're treating her the same way as if she would have just gone to the border and asked as an applicant for admission for asylum. Well, I think we have that part of your argument. I think you have other ground to cover. Yes, and I'd actually like to also bring up the Supreme Court's case in Fernandez-Vargas to explain how the reinstatement provision operates. And the Supreme Court said that it operates to end an illegal conduct that is executed by the illegal entry after a removal order, and that the operation of the reinstatement provision ends once the person departs. So in this case, she departed, so the conduct that would have triggered the reinstatement provision ended. And when she was paroled back into the United States, there wasn't that illegal conduct. There wasn't that illegal entry to re-trigger the reinstatement. Does that argument mean that your motion to reopen became moot as soon as she was removed? No, Your Honor, because under the Supreme Court, it's held that everyone has one right to a motion to reopen under the Act. I know, but you're saying once the person is removed, you're saying that there's no – the existence almost of the authority to reinstate the removal order and to process it ends. Your argument about her presenting herself at the border and being allowed in at that time, I mean, it's a – imaginative sounds a little bit more critical than I want it to be, but it's not an argument supported by any case law, it seems to me. Yes, and I think this case has – this issue has not come up before, and I couldn't find any case where this issue has actually come up. But, you know, when the board reopened her case, there's authority for saying that a motion to reopen reopens the order itself. And in that decision in 2012, the board said they were remanding for all relief from removal. So the board didn't clarify, you know, what relief they were – they wanted the immigration judge to consider, and a motion to reopen normally operates – and I don't have any authority to say it doesn't operate this way – to reopen the removal proceeding, to reopen that removal order and vacate it. I want to discuss withholding of removal and convention against torture and how the IJ and BIA dealt with that. Okay, so the Board of Immigration Appeals erred when they found that there was no nexus between the persecution she suffered and her particular social group of her family. There was overwhelming evidence that every time the gang members sought to persecute her, they referred to her brother, they referred to her name, her family. And the board relied on just very minimal evidence that the purpose of the – the motivations of the persecutors was because of some information they wanted to obtain from her. And I think that they erred because they – the information that they say that this was the primary reason was this information was always tied to her brother. You know, without her brother, there was no information for the persecutors to request or to want. So I think they disregarded, you know, the evidence in the record that there was – that the persecutor's motive was to persecute her because of her membership in her family. Well, perhaps they determined that the appropriate focus was on the information and not on the fact that she may have been privy to it because of her relationship. Correct. Would that have been the reason? Well, I think the reason was because they thought her brother had left her some information. Or that's one of the reasons. Because they also sent threatening notes to her sister-in-law, who they never referred to any information, but they only knew about her sister-in-law because of the relationship to her brother. But I think what you're saying is the appropriate emphasis was on the familial relationship and not the fact that they were trying to extract information from her that may have been left to her by her brother. Yes, I think the information was just secondary. And, you know, not every time they threatened her or persecuted her did they refer to information. I mean, you know, they said they asked for information a few times, but, you know, it always went back to her brother. And their, you know, threats of her parents had nothing – they never asked about information to them. So I think over the – I think the BIA failed to consider all of the evidence in the record and only focused on one small part of the record. Let me – I don't know if we're changing categories or not. I think we're talking about the same thing. But the idea of membership in a particular social group – I can't remember a case, but can you point me to a case where any court has ever held that the nuclear family can be a particular social group? Yes, Your Honor. Every court, other than I believe this circuit, has held that a family is a particular social group, can be a particular social group under the Act. And even the Board of Immigration Appeals – I'm sorry, I don't remember the exact site, but their most recent decision about a particular social group said that family is an example of a particular social group because it's immutable. You know, you can't change who your family is. You know, you can't – that's something that can't be changed. Well, here the BIA affirmed the IJ who concluded that family didn't meet particularity or social visibility. I think the BIA actually said that – I think they conceded that family could be a particular social group. I think the immigration judge erred in thinking that her family wasn't a particular social group. You know, it is particular because – and it can be – because it's defined by the relationship to the family members and how they may impute people into that family. Well, didn't the BIA affirm and decline to address whether her family constituted a particular social group? Yes, because I think they focused just on the nexus and said, well, if there's no nexus, it doesn't matter whether – they didn't think they needed to get to whether there was a particular social group. On particularity. I think they didn't think they needed to get to whether there was even a particular social group because they felt that there was – the reason for the persecution was for information and that information wouldn't be a particular social group. I think that is – I would agree with your interpretation of the BIA decision and we are looking at IJ and then BIA agreement on the facts. It seems to me that this is a factual question of was this because of the information which could be shared with family members, close friends, other relationships that are outside of familial relations. And that was to me the ultimate decision of the BIA that there's not – that your client had not established that a protected ground, the social group, was at least one central reason. Isn't that a fact finding? Well, I think it's a mixed question. On the one hand, determining what the motivations were are a factual question, but whether she met her burden of showing that the motivation was on account of the nexus part, I think that's a legal question that can be reviewed. I want you to tell us more in rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan appearing on behalf of the Respondent, the U.S. Attorney General. First, the Court should conclude that the petitioner is not entitled to seek asylum because under INA Section 241A.5, she's barred from seeking any relief. There is some inconsistency in the INA with regard to relief and protection, but there's no inconsistency with how asylum is described. It is always described as relief. Well, let me ask, I was concerned a little bit about the inconsistency of Congress saying no relief and then the Justice Department promulgating a regulation, I suppose, whoever promulgated 241.8, if I remember the number. But it seems to me that withholding removal and convention against torture is an obligation of this country regardless of Congress through conventions that we have, that we cannot send somebody back to a country in which they would be tortured or persecuted. Is that the justification for the regulation that allows somebody to be considered for withholding removal and relief due to convention against torture? It's my understanding that the regulation does indeed make that clear, that our international obligations are such that withholding of removal and protection under the convention of torture have to be available. You said relief, protection under the convention against torture. Relief is a dangerous word in this particular statutory. Unfortunately, they're not defined in the INA. Practitioners almost always refer to asylum, adjustment of status, cancellation of removal and voluntary departure as forms of relief and withholding of removal and protection under the convention against torture as protection. Well, regardless of what it meant, we do have at least the interpretation by immigration officials through this regulation of how also to divide up the two between relief and withholding of removal, et cetera. Why don't you respond to the argument being made about parole? I think it's a little bit of a red herring. You're absolutely correct. It's a little bit like no good deed goes unpunished. I don't think that the government would agree to bring somebody back if that was going to change the status of their prior illegal reentry. At least they wouldn't do it anymore. Yes. Sort of the argument being made today. There actually is a subsection, a regulation that refers to parole, and that's 8 CFR section 212.5E2I. I didn't mention it in my brief, but it says that the alien is restored to the status she had at the time she was granted parole. You can't get a greater status than what you had prior to being given parole, and prior to being given parole, she had in fact been removed for her illegal reentry. It just doesn't make sense that parole would open wide the doors for her to be treated differently. What is the practical reason in this case to have paroled her once the motion to reopen was granted? Why would that? I don't want to say no good deed, but basically is it quite important to the petitioner, I think you commented at that stage, to be present, to participate with attorney if available? Is that what's going on here, just the logistics of working through all that has to be done? It's certainly helpful for the client to be available. Yes. I think it was a reasonable decision that she ought to be present and give testimony live and be available to her. That's all that's going on with that parole, as far as you know. That was the reason for that parole. Yes. As far as I know, that's the reason. Unfortunately, we don't have the parole document in the record. I'm not even personally sure exactly what one looks like. I haven't seen one before. I did make some attempts to get that before today, and I was not successful. I assume that there were some conditions attached to it, or at least presumptively, that the purpose was simply to attend this withholding only hearing. There's another interesting point made, and I think the court showed some interest about the effect of reopening and also the effect of the executed removal order and how this relates to parole. I see it as that when the petitioner was paroled back into the United States, that removal order, which had been executed, was in fact sort of reopened. It doesn't undo the past, but we don't consider, in cases where aliens are in withholding only proceedings, the decision to remove them final until that withholding only proceeding has been completed. So while the removal order was final, it really wasn't executable until that withholding proceeding was finished. Is parole something that is a term of art in immigration law different from the dictionary sense or criminal law sense of parole? Yes, Your Honor. It has a very specific and different meaning in the immigration context. And so is it a suspension to allow entry for a limited purpose under stipulated conditions? That's correct, Your Honor. It's for a limited purpose and for a temporary period of time. My understanding, we were talking earlier in the case, if you were hearing of it, that there are only two categories of something. We were talking about open fields and cartilage. Are there only two ways to cross a border? One is to be admitted and one is to enter. She has made the argument in a briefing, I don't know if she said so much today, that she made that her client made a legal entry when she was paroled. She certainly was not admitted. That's established by statute when a person is paroled. Is that a fair statement? Did she legally enter the country? Since she's here, she either had to have entered or had to have been admitted. It's either one or the other. I do think that's a very tricky area. There's certainly differences between entry and admission. As you pointed out, the statute that deals with parole says that parole is not an admission. Also, for persons in her position that have been removed after an order of deportation had already been entered, they have to seek from the attorney general permission to reapply for admission. There's no evidence that she ever did that. In this case, at least, her entry was authorized pursuant to parole, but it wasn't an admission. I'm not sure it was a legal entry. It definitely wasn't an authorization. She's not illegally in this country. If she's paroled here, she's not illegally in this country. I don't want to add the word entry to that. Then I would agree with you. It's basically neither a lawful entry nor an illegal entry. It's a special entry without changing anything except physically present to participate in this area. I like your reasoning there, Your Honor. Yes. I would agree with you 100%. Well, maybe counsel opposite can poke a hole in it. Maybe so, Your Honor. I hope that that finishes the discussion of parole. I'm happy to entertain any further questions. I think it would be good to look at withholding and the Convention Against Torture and the I mean, there's certainly substantial, maybe not substantial in quantity, but there's significant evidence that was introduced regarding the hardships that Petitioner would face back in Honduras and has faced. Is this a matter of, is this a question that turns on social groups? Since the Convention Against Torture seems to be a harder argument to make here and we are probably really under withholding of removal for persecution due to social group, though that's certainly just an initial opinion and may not be shared. So what's the best argument supporting the BIA's decision, BIA's decision on withholding? I think the best argument is that it's Petitioner's burden and she didn't meet her burden to show that one central reason for the gang coming after her was to in some way punish her for her family ties or in some way overcome those family ties. What about the acquiescence of authorities aspect of that? Or am I confusing two? I think, Your Honor, the acquiescence issue really goes more toward the Convention Against Torture. Well, this sort of goes into our standard review for fact-finding. Their argument was made that this is also a mixed decision of law. It's hard to interpret this evidence, it seems to me. If those within the family have, according to Petitioner's evidence, some of them have been informed of information that gang members are very concerned about, that's at least a start toward showing membership in that family is the reason for the persecution or for the threats. So was it just not substantial enough? Was it too mixed of evidence as to why the gang was after her? The Board did characterize the evidence as insufficient, Your Honor. In this case, I disagree with Petitioner's contention that the brother was invoked every time that threats occurred. The record does not support that contention. Initially, in her first hearing, the Petitioner did say that, and consistently stated that the gang had been after her for information that her brother apparently had and of which she was unaware. At the second hearing, that seemed to get a little less emphasis. She did, again, repeat that the gang had interest in some information, but the subsequent threats that she got didn't mention her brother or that information. With regard to her parents, the letters from the parents in the record don't seem to indicate that the gang members were seeking them on the basis of their family membership. They state that the gang was seeking a war tax, some form of extortion that unfortunately does seem to be somewhat common in Honduras. Well, if the countries were switched and Petitioner was correct, then somebody could never be sent back to the United States to a big city because there are gangs in every big city and they war against each other and the families are a member of one side or the other. It doesn't seem to me that that's what this statute and the regs are about. There's many cases, Your Honor, that discuss the unfortunate existence of gangs and their criminal intent. Unfortunately, asylum, withholding, cat protection, more with asylum than withholding because they require an excess. Generally, the gangs have criminal motives in mind. It appears so in this case that the gang was opportunistically looking at the parents because they were business owners and the parents and the Petitioner herself concede that in Honduras, gang members often approach business owners because they have money. But that's not a protected ground. In the Petitioner's case, it doesn't appear that her brother was murdered because of his family membership. It appears from the testimony like he may have been involved in drugs and was a rival gang member and that the shooting had something to do with either his drug involvement or the rival gang member. Sounds like every morning's paper in New Orleans. I'm not from New Orleans and I'm sorry that I don't read the paper. We do have similar things that happen in D.C. as well. They are unfortunate. They're just not protected under our withholding of removal scheme. And the Petitioner didn't meet her burden to show that that was one central reason for the harm she suffered and the harm she feels. On a convention against torture, has that been, and I'm trying to remember the briefs as opposed to the other papers, that has been argued on appeal as well by the, on appeal, on petition review by the Petitioner. Why don't you respond to that a bit? I don't know if you want to have any rebuttal about it but I wanted to at least give both of you a chance to address that issue. On the issue of convention against torture, the focus of the agency here was really on the government acquiescence element. The Petitioner testified that someone had shot at her, that the police came, that they apprehended the shooter and that they refused to drop the charges against the shooter because he had a weapon. That's one of the reasons that the agency concluded that in fact it appeared that the government of Honduras was not acquiescing in the gang conduct, that they had an interest in prosecuting this individual. She also testified that she complained about the anonymous threats that she had received and that a report was taken with regard to these threats. Again, the agency found that that didn't amount to government acquiescence because the government of Honduras was in fact making efforts and showing an interest in protecting the Petitioner. In addition, the parents, the sister-in-law and it appears her half-siblings all remain unharmed in Honduras and that's yet another factor to look toward. Unharmed so far in that dangerous situation. What about this idea of, oh, you can move somewhere else within the country? That's always struck me as a little odd. That is something that they could look to. I don't believe the board mentioned that specifically in its decision. Honduras is a pretty small country, I think, about the size of Virginia if I'm not mistaken. But it appears that the sister-in-law at least moved away from the hometown and was not pursued after the first threat that she received, although she says that was because she was in hiding. Again, I don't think the board relied on that issue, but it would appear from the evidence that the Petitioner herself might be able to return without facing harm whether that be in her hometown or elsewhere. Regardless of which way we decide this Petition Review, is there anything in the issues of this case that are unsettled in this circuit from your review that would be useful to opine on for this court to? I haven't seen any published case that explicitly states that asylum is not available to persons in the Petitioner's position. It seems quite clear to the government. Self-evident to you, huh? It seems quite clear to the government, but I'm not aware of a published decision. The closest we've got is a Second Circuit decision, Herrera-Molina, which has in a footnote a little bit of an explanation about the Fernandez-Vargas footnote. That concerns me about this case. This change dates back a ways. 1996, no published authority on what is certainly plausible as your argument. For us to take a published position either way would seem to be a very rare statement by any circuit court, but I was wondering if you thought that would be useful to have a published opinion on? So long as it's the right result, I'm sure, from your mind. I do think it would be useful, Your Honor, because I'm aware that the American Immigration Lawyers Association on their website has been advocating that immigration practitioners raise this issue, so I think it's being raised across the country in many cases. This issue about whether asylum is available for those who have had reinstatements? Exactly, Your Honor. All right, counsel. Thank you. If there's no further questions, we ask that you deny the petition for review. Thank you. We'll hear in rebuttal. Thank you, Your Honors. First, I would like to say that the characterization of the removal order as something that's ongoing just because she filed a motion to reopen is not supported under the Act. In Section 1101G of the Act, 8 U.S.C. 1101G,  is executed once the person departs, so when she departed, the removal order was executed. It was final. So the characterization that somehow this is an ongoing proceeding and that that's what the government can rely on to say that her parole didn't change the applicability of her... It may not be an ongoing proceeding, but it doesn't change her status. Well, being subject to reinstatement of your removal order is not a status either. You're either in the United States through admission, through a legal entry, you illegally entered, you're here illegally, or through some type of authorization from the government. But isn't she for the rest of her life an alien who has been removed from the United States? She is, but that's more into her... That more goes to her removal history, the history of her immigration status than to an actual status. You know, a status could be like a green card holder, a permanent resident, or someone with a non-immigrant visa. Those people have statuses. Sounds like a slender read to me, but maybe there's a difference there. Yes, Your Honor, and so when she you know, the parole, although maybe the government doesn't like the fact that they had to parole her, and that was the only way that they can bring someone back, and I think their argument that it's somehow different in this case than in other cases of parolees is just not supported by the Immigration Act or the regulations. They don't differentiate. They may differentiate different reasons, but that doesn't change the person's presence as a parolee. Well, counsel mentioned, opposing counsel, regulation under 212 I didn't write down the subpart 212 being the INA section that says on parole the person is in the status. You may know what the regulation says, but my perception of what I was told in the status last had in this country what can you say about that regulation? It does say that, except that not being here unlawful is not a status, but it also, in order for her I think you have to read that in connection with the reinstatement provision, which the reinstatement provision doesn't point to an illegal admission or that you weren't admitted to the United States. It just says simply entry that you entered illegally after a removal order. And then if you go to the Supreme Court's case, the way they interpret it is that being in the United States after entering illegally after a removal order that that's the unlawful action and that once you leave that unlawful action ends. With a removal order, if she let's say she's outside the country with a she could apply for re-admission into the United States she has a US citizen husband, he can petition for her she could, if they approve the I-212 could be re-admitted into the United States as a permanent resident. But under the government's theory, then that prior order then somehow exists in perpetuity and they could reinstate it again because they're saying that any time after a removal order you enter and you entered illegally and then even if you left if you come back, well there's that removal order and we can reinstate it and that just doesn't seem to be supported by that's not supported by the Immigration Act. Regardless of how global a position that could be taken, the special situation here is that she was paroled for a continuation of the proceedings even if the order hadn't been executed there was a pending at the time motion to reopen or maybe a granted motion to reopen before she was returned so that at least would be a limiting principle in whatever we held in this case so it's not henceforth and forevermore would be in that status or quasi-status but at least until this proceeding dealing with her removal is actually final including it's not final today depending on what this court ultimately does could alter the outcome so that is a special limiting situation for the working of parole it seems in this case well I would respectfully disagree that there's a difference and I think that would be a new decision because there's no decision saying specifying when someone's paroled for maybe one purpose or the other that there's somehow a different legal effect of that parole I'll give you one more minute time was taken up by a lot of questions thank you your honor I'd like to again reiterate that Ms. Ramirez the evidence did point to her brother and there's no requirement that the particular social group that her brother was also a member of the particular social group because he was the foundation for the particular social group so although he may have been involved in some type of a legal activity I mean that legal activity is what created the gang's focus on him and then which brought in the rest of her family their relationship to him is what the gangs were interested in going to relocation I mean she tried to relocate to which is two and a half hours away also a large city and she was unable to the gang members found her and she had to flee the United States again and come back here so I don't think that she would be able to internally relocate and that was even supported by an expert opinion who has been an expert on behalf of the United Nations on behalf of this country on the United States government who said that internal relocation would be unavailable given the size of Honduras and given the network of these gang members thank you your honors thank you both for exploring the intricacies of immigration we'll be in recess for a few minutes